UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AYLENE ZEIGER,

                          Plaintiff,

          v.

HOTEL CALIFORNIA BY THE SEA LLC
et al.,

                          Defendant.

Case No. C21-1702-TL-SKV

REPORT AND RECOMMENDATION

I.        INTRODUCTION

This is an employment discrimination case filed by Plaintiff Aylene Zeiger against

Defendant Hotel California by the Sea LLC and other unnamed individual and corporate

defendants.  After removing this action from King County Superior Court, Dkt. 1, Defendant

Hotel California filed a Motion to Compel Arbitration, Dkt. 15.  Because the Court finds that

questions of fact exist as to whether Plaintiff and Defendant entered into the arbitration

agreement in question, a ruling on Defendant's Motion to Compel Arbitration, Dkt. 15, should be

deferred pending the outcome of an evidentiary hearing under 9 U.S.C. § 4.

          / / /

          / / /

II.    <u>BACKGROUND</u>

Plaintiff is a 58-year-old certified chemical dependency counselor with a state certification as a clinical supervisor.  Dkt. 1-2 ¶ 11.  Defendant provides drug and alcohol rehabilitation services.  *Id.* at ¶ 12.  On or around February 4, 2019, Plaintiff began working for Defendant's drug and alcohol rehabilitation center in Bellevue, Washington.  *Id.* at ¶ 13. At the time Plaintiff was hired, Defendant had no arbitration policy in place.  Dkt. 15 at 2; Dkt. 18 at 2. During Plaintiff's new hire orientation, she created a password protected account with "BambooHR," an online database which stores human resources documents for employees to access and sign.  Dkt. 16 ¶ 5.

On or around June 25, 2019, Defendant's Human Resources Director, Anjanee Alaalotoa, sent out an alert via the BambooHR system detailing Defendant's new arbitration policy.  Dkt. 16 ¶ 7.  The alert, which Plaintiff received in her work email, instructed her to click a link to review the arbitration agreement ("Arbitration Agreement").  *Id.*  Plaintiff did so that day.  *Id.* at 10; Dkt. 19 ¶ 3.

The Arbitration Agreement provided that it was "governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce[,]" and "applies to any dispute arising out of or related to Employee's . . . application or selection for employment, employment, and/or termination of employment with [Defendant] . . . ."  Dkt. 16 at 4.   It further provided that an arbitrator, "and not any court," would have "exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable."  *Id.* at 5.

1    Per the Agreement, arbitration would be "administered by JAMS," and except as

2    provided in the Agreement, would be under "then current JAMS Employment Arbitration Rules

3    ('JAMS Rules')" ("Delegation Provision"), which the Agreement indicated were "available

4    through Human Resources or via the internet at www.jamsadr.com/rules-employment or by

5    using a service such as www.google.com to search for 'JAMS Employment Arbitration Rules' . .

6    . .").  Dkt. 16 at 5.

7    Rule 11(b) of the JAMS Rules states:

8       Jurisdictional and arbitrability disputes, including disputes over the formation,
        existence, validity, interpretation or scope of the agreement under which
9       Arbitration is sought, and who are proper Parties to the Arbitration, shall be
        submitted to and ruled on by the Arbitrator. Unless the relevant law requires
10      otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability
        issues as a preliminary matter.
11
12   *Rule 11. Interpretation of Rules and Jurisdictional Challenges*, JAMS Employment Arbitration
     Rules & Procedures, https://www.jamsadr.com/rules-employment-arbitration/english#Rule-11
13   (effective June 1, 2021).

14    The Agreement also included a section titled "<u>YOUR RIGHT TO OPT OUT OF

     ARBITRATION</u>" ("Opt-Out Provision"), which provided as follows:
15
16      Arbitration is not a mandatory condition of your employment at the Company, and
        therefore you may submit a statement notifying the Company that you wish to opt
17      out and not be subject to this Agreement.  In order to opt out, you must notify the
        Company's Human Resources Department that you are opting out of this
18      Agreement.  In order to be effective, your opt-out notice must be provided by email
        to Human Resources at HR@HotelCaliforniaByTheSea.com within 30 days of
19      your receipt of this Agreement.  The Company will accept any language giving
        notice of your decision, but provides the following sample language to assist you:
20      "I opt out of the arbitration agreement."  If you opt out as provided in this paragraph,
        you will not be subject to any adverse employment action as a consequence of that
21      decision and may pursue available legal remedies without regard to this Agreement.
        If you do not opt out within 30 days of your receipt of this Agreement, continuing
22      your employment constitutes mutual acceptance of the terms of this Agreement by
        you and the Company.  You have the right to consult with counsel of your choice
23      concerning this Agreement.

     Dkt. 16 at 7.

REPORT AND RECOMMENDATION - 3

1      Finally, the Agreement included a signature section, with one portion titled "<u>AGREED</u>,"

2 under which Defendant had affixed its electronic signature, and the other portion titled

3 "<u>RECEIVED AND AGREED</u>" ("Received and Agreed Provision"), under which Plaintiff was to

4 affix her electronic signature and provide the date.  Dkt. 16 at 8.  The Received and Agreed

5 Provision included the following acknowledgement above the signature line:

6          I UNDERSTAND THAT BY AFFIXING MY ELECTRONIC SIGNATURE, I
AM AGREEING TO BE BOUND BY THIS ARBITRATION AGREEMENT

7          (SUBJECT TO MY ABILITY TO OPT OUT).  I FURTHER UNDERSTAND
AND AGREE TO THE USE OF AN ELECTRONIC METHOD OF SIGNATURE

8          TO DEMONSTRATE MY ACCEPTANCE OF THIS ARBITRATION
AGREEMENT, AND I UNDERSTAND THAT MY ELECTRONIC

9          SIGNATURE IS AS LEGALLY BINDING AS AN INK SIGNATURE.  I ALSO
AGREE THAT THIS ELECTRONIC COMMUNICATION SATISFIES ANY

10         LEGAL REQUIREMENT THAT SUCH COMMUNICATION BE IN WRITING.
I UNDERSTAND THAT I MAY PRINT A COPY OF THIS ARBITRATION

11         AGREEMENT FOR MY RECORDS OR REQUEST A COPY AT ANY TIME.

12 Dkt. 16 at 8.

13       Plaintiff did not sign and date below the Received and Agreed Provision, nor did she send

14 Defendant a statement indicating she wished to opt-out of the Arbitration Agreement in

15 accordance with the Opt-Out Provision's requirements.  Dkt. 16 ¶ 9; Dkt. 19 ¶ 10.

16       Plaintiff continued her employment with Defendant until March 12, 2021, when

17 Defendant terminated her, allegedly for performance-related reasons.  Dkt. 1-2 ¶¶ 43–44, 46.

18 Plaintiff, however, contends she was terminated because of her age, *id.* at ¶¶ 52, 61, and that

19 Defendant engaged in a pattern of age-based discrimination during her employment, *id.* at ¶¶ 36–

20 42.

21       On December 10, 2021, Plaintiff sued Defendant in King County Superior Court,

22 bringing claims for age discrimination and hostile work environment under Washington and

23 federal law, as well as claims for negligent supervision and hiring, and failure to train.  Dkt. 1-2

1    ¶¶ 51–71.  On December 29, 2021, Defendant removed the action to this Court, *see* Dkt. 1, and

2    on February 24, 2022, filed the present Motion to Compel Arbitration, Dkt. 15.

3          Defendant argues that because Plaintiff did not opt out of the Arbitration Agreement

4    within the 30-day period required by the Opt-Out Provision and continued her employment with

5    Defendant, she is bound by the Agreement's terms, meaning the Federal Arbitration Act

6    ("FAA") governs the parties' dispute and requires the Court to compel arbitration of Plaintiff's

7    claims.  Dkt. 15 at 6; Dkt. 20 at 5.  Plaintiff, on the other hand, argues that because she never

8    signed the Received and Agreed Provision, she never assented to be bound by the Arbitration

9    Agreement, meaning no agreement to arbitrate is in place and this dispute is properly before this

10   Court.  Dkt. 18 at 8–14.

                           III.          DISCUSSION

11

12         A.    Legal Standard

13         The FAA provides for the enforceability of valid arbitration agreements and "permits a

14   party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district

15   court for an order compelling arbitration in the manner provided for in the agreement."  *Chiron*

16   *Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. § 4).

17   A court's role in such circumstances is "limited to determining (1) whether a valid agreement to

18   arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

19   issue."  *Id.* (citations omitted).  If the answer to both questions is 'yes,' then the agreement must

20   be enforced.  *Id.*  The FAA "leaves no place for the exercise of discretion by a district court, but

21   instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as

22   to which an arbitration agreement has been signed."  *Id.* (quoting *Dean Witter Reynolds Inc. v.*

23   *Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original).

1          However, the "first principle" of arbitration is that arbitration is "strictly a matter of

2   consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties

3   have agreed to submit to arbitration." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733,

4   741–42 (9th Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299

5   (2010)) (emphasis in original).  When determining whether parties have agreed to submit a

6   dispute to arbitration, courts apply "general state-law principles of contract interpretation, while

7   giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the

8   scope of arbitration in favor of arbitration." *Id.* at 742 (quoting *Mundi v. Union Sec. Life Ins.*

9   *Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009)) (internal quotation marks and citations omitted).  But

10  when parties contest the existence of an arbitration agreement, as opposed to the scope of

11  arbitration, no such presumption in favor of arbitrability is in place.  *Id.*

12         The party seeking to compel arbitration must prove "the existence of an agreement to

13  arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomm. Am.*, 845 F.3d

14  1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th

15  Cir. 2014)).  This burden is substantial and the Court must give the party denying the existence

16  of an agreement to arbitrate "'the benefit of all reasonable doubts and inferences that may

17  arise.'" *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir.

18  1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

19  *Accord Peters v. Amazon Services LLC*, 2 F. Supp. 3d 1165, 1169–70 (W.D. Wash. 2013).

20         Contract formation issues are decided by the district court, *Sanford v. Memberworks,*

21  *Inc.*, 483 F.3d 956, 962 (9th Cir. 2007), applying ordinary state-law principles governing the

22  formation of contracts, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  In

23  deciding whether an arbitration agreement exists, a court should apply a summary-judgment-

1    style standard.  "Only when there is no genuine issue of fact concerning the formation of the

2    agreement should the court decide as a matter of law that the parties did or did not enter into

3    such an agreement." *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141 (quoting *Par-Knit Mills,*

4    *Inc.*, 636 F.2d at 54).  If there is a genuine issue of material fact regarding the formation of an

5    agreement to arbitrate, the matter must be resolved through an evidentiary hearing or mini-trial.

6    *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to

7    perform the same be in issue, the court shall proceed summarily to the trial thereof."); *Kwan v.*

8    *Clearwire Corp.*, C09-1392-JLR, 2012 WL 32380, at *11 (W.D. Wash. Jan. 3, 2012) (finding

9    genuine issues of material fact concerning whether users had been given actual or constructive

10    notice of arbitration clause in terms of service, and ordering evidentiary hearing to address

11    factual issues).

12          B.    <u>Existence of a Valid Arbitration Agreement</u>

13          Because Plaintiff disputes whether the parties entered into the Arbitration Agreement, the

14    Court must decide whether a contract to arbitrate was formed between them.[1]

15          Defendant argues that federal law governs this determination because "1) this case is in

16    federal court based on a federal question, 2) procedural federal law always applies in federal

17    court, and 3) the arbitration agreement section of the FAA as governing law require[s] the court

18    to apply federal law."  Dkt. 20 at 2.  Per Defendant, the Court "'must apply federal substantive

19    law to any arbitration agreement within the coverage of the FAA.'"  *Id.* (quoting *Cox v. Kroger*

20    *Co.*, 2 Wn. App. 2d 395, 403, 409 P.3d 1191 (2018)).  While it may be true that federal

21    substantive law applies to arbitration agreements that fall within the FAA, and while the

22

23          [1] The parties do not dispute that if the Arbitration Agreement is valid, the FAA applies and
Plaintiff's claims are within the scope of the Agreement.  In any case, the Court concludes as much.

1   Arbitration Agreement provides that it is governed by the FAA, Dkt. 16 at 4, the FAA is only

2   applicable if the parties agreed to enter into the Arbitration Agreement in the first place—a

3   question that is governed by Washington law, *Goldman, Sachs & Co.*, 747 F.3d at 742.  Thus,

4   the Court applies Washington contract law to determine whether an agreement to arbitrate exists

5   between Plaintiff and Defendant.

6        At issue is (1) whether Plaintiff accepted Defendant's offer to arbitrate; (2) whether,

7   assuming she did, the Arbitration Agreement was supported by consideration; and (3) whether

8   the Arbitration Agreement is procedurally unconscionable.

9        1.    *Mutual Assent*

10       At the heart of the parties' disagreement is whether Plaintiff assented to be bound by the

11   terms of the Arbitration Agreement.

12       Under Washington law, the formation of a contract requires an objective manifestation of

13   mutual assent.  *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945

14   (2004) (en banc) ("Washington follows the objective manifestation test for contracts."); *In re*

15   *Marriage of Obaidi & Qayoum*, 154 Wn. App. 609, 616, 226 P.3d 787 (2010) ("A valid contract

16   requires a meeting of the minds on the essential terms.").  "'It is essential to the formation of a

17   contract that the parties manifest to each other their mutual assent to the same bargain at the

18   same time.  Mutual assent generally takes the form of an offer and an acceptance.'"  *Yakima Cty.*

19   *Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388, 858 P.2d 245 (1993) (quoting

20   *Pacific Cascade Corp. v. Nimmer*, 25 Wn. App. 552, 555–56, 608 P.2d 266 (1980)).  The offeror

21   is the master of the offer, meaning the "offeror may propose acceptance by conduct," and the

22   offeree "may accept by performing those acts proposed by the offeror."  *Discover Bank v. Ray*,

23   139 Wn. App. 723, 727, 162 P.3d 1131 (2007).

1    "Failure to reject an offer is not equivalent to assent of that contract since silence is

2    acceptance only where there is a duty to speak." *Saluteen-Maschersky v. Countrywide Funding*

3    *Corp.*, 105 Wn. App. 846, 853, 22 P.3d 804 (2001) (citing *Goodman v. Darden, Doman &*

4    *Stafford Assoc.*, 100 Wn.2d 476, 482–83, 670 P.2d 648 (1983)).  "The Ninth Circuit has found

5    that such a duty exists when an employer provides employees with a new arbitration agreement

6    and gives them adequate time to opt out." *Robbins v. Comcast Cable Commc'ns, LLC*, 3:19-CV-

7    05603-RBL, 2019 WL 4139297, at *4 (W.D. Wash. Aug. 30, 2019) (citing *Circuit City Stores,*

8    *Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (applying California law)).  Whether the

9    parties manifested mutual assent is a question of fact.  *Sea-Van Investments Assocs. v. Hamilton*,

10   125 Wn.2d 120, 126, 881 P.2d 1035 (1994).

11       Defendant argues there is no requirement that a party sign an arbitration agreement under

12   the FAA in order to accept it, Dkt. 15 at 4, and that Plaintiff accepted Defendant's offer to

13   arbitrate by (1) failing to opt-out of the Arbitration Agreement within 30 days; and (2)

14   continuing her employment with Defendant when the Agreement provided that doing so would

15   constitute mutual acceptance of the terms of the Agreement, Dkt. 20 at 5–8.  Plaintiff does not

16   dispute that she received and reviewed the Arbitration Agreement; however, she alleges she

17   never accepted Defendant's offer to arbitrate because she did not sign the Agreement, as required

18   by the Received and Agreed Provision.  Dkt. 18 at 8–9.  Per Plaintiff, her signature was required

19   for the Agreement, including the Opt-Out Provision, to take effect.  *Id.*

20       Whether Plaintiff accepted Defendant's offer to arbitrate depends on whether she

21   conveyed acceptance in the manner required by the Arbitration Agreement.  The Court, applying

22   Washington principles of contract formation and interpretation, must determine as much.

23

1    In ascertaining the meaning of the terms in a contract, the parties' intent controls.

2    *Anderson Hay & Grain Co., Inc. v. United Dominion Indus., Inc.*, 119 Wn. App. 249, 254, 76

3    P.3d 1205 (2003).  While this intent is largely discerned by focusing on the objective

4    manifestations of the agreement, as opposed to the unexpressed subjective intent of the parties,

5    *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005), it may

6    also be discerned by considering extrinsic evidence, including the subject matter or objective of

7    the contract, all circumstances surrounding the making of the contract, the subsequent acts and

8    conduct of the parties, and the reasonableness of the parties' respective interpretations,

9    *DePhillips v. Zolt Constr. Co.*, 136 Wn.2d 26, 32, 959 P.2d 1104 (1998); *Scott Galvanizing, Inc.*

10   *v. N.W. EnviroServices, Inc.*, 120 Wn.2d 573, 580–81, 844 P.2d 428 (1993).  Courts give "words

11   in a contract their ordinary, usual, and popular meaning unless the agreement as a whole clearly

12   demonstrates a contrary intent." *4105 1st Ave. S. Invs., LLC v. Green Depot WA Pac. Coast,*

13   *LLC*, 179 Wn. App. 777, 784, 321 P.3d 254 (2014).  An interpretation which gives effect to all of

14   the words in a contract is "favored over one which renders some of the language meaningless or

15   ineffective." *Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980).  While the parties'

16   intent is a question of fact, *Martinez v. Miller Indus., Inc.*, 94 Wn. App. 935, 943, 974 P.2d 1261

17   (1999), if the contract language is clear, their intent is ascertained from the language of the

18   contract as a matter of law, *In re Estates of Wahl*, 99 Wn.2d 828, 831, 664 P.2d 1250 (1983).

19   If only one reasonable meaning can be ascribed to a contract, then it is unambiguous and

20   must be enforced as written.  *See Transcon. Ins. Co. v. Washington Pub. Utilities Districts' Util.*

21   *Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988); *Martinez*, 94 Wn. App. at 943.  However, if a

22   contract's meaning is uncertain or subject to two or more reasonable interpretations, then it is

23   ambiguous and presents a question of fact.  *See, e.g.*, *Viking Bank v. Firgrove Commons 3, LLC*,

1    183 Wn. App. 706, 713, 334 P.3d 116 (2014); *Jensen v. Lake Jane Estates*, 165 Wn. App. 100,

2    105, 267 P.3d 435 (2011); *Martinez*, 94 Wn. App. at 943.  A court will not read ambiguity into a

3    contract if it can reasonably be avoided.  *McGary v. Westlake Investors*, 99 Wn.2d 280, 285, 661

4    P.2d 971 (1983).

5            The Opt-Out Provision provided Plaintiff with the opportunity to opt out of arbitration by

6    submitting a statement to Defendant within 30 days of her receipt of the Arbitration Agreement

7    indicating she did not wish to be subject to arbitration.  Dkt. 16 at 7.  Further, it provided that if

8    Plaintiff did not opt out within the requisite timeframe, her continuing employment would

9    constitute "mutual acceptance of the terms of this agreement by you and the company."  *Id.*  The

10   Received and Agreed Provision, however, indicated that by signing beneath it, Plaintiff would

11   acknowledge that she was "AGREEING TO BE BOUND BY THIS ARBITRATION

12   AGREEMENT (SUBJECT TO [HER] ABILITY TO OPT OUT)" and that she agreed to the

13   "USE OF AN ELECTRONIC METHOD OF SIGNATURE TO DEMONSTRATE [HER]

14   ACCEPTANCE OF THIS ARBITRATION AGREEMENT."  *Id.* at 8 (emphasis in original).

15   Reading these provisions together, it is unclear how the Agreement intended Plaintiff to manifest

16   assent to its terms—was it by failing to opt out of arbitration and continuing her employment (as

17   Defendant contends), or by signing below the Received and Agreed Provision (as Plaintiff

18   contends)?  The Court finds both interpretations reasonably supported by the text of the

19   Arbitration Agreement, meaning the Agreement is ambiguous.

20           Plaintiff argues there is no ambiguity between the Opt-Out Provision and the Received

21   and Agreed Provision because the Arbitration Agreement, including the Opt-Out Provision,

22   would only become effective if Plaintiff signed the Received and Agreed Provision.  Dkt. 18 at

23   8.  Per Plaintiff, by refusing to sign the Received and Agreed Provision, she rejected Defendant's

offer to arbitrate. *Id.  See also id.* at 9 (arguing it would be unreasonable to construe the Opt-Out

Provision as self-executing because "the 'opt out' provision simply cannot self-execute without

[Plaintiff's] agreement to the contract encompassing it."); *id.* at 10 (arguing that because the Opt-

Out Provision's first sentence reads that an employee "***may*** submit a statement notifying the

Company that you wish to opt out and not be subject to the Agreement[,]" such a written

statement is not required to reject the entire Agreement, and that the next sentence, which states

"[i]n order to opt out, you must notify the Company's [HR] . . . ," only applies if the entire

Agreement is accepted through signature) (emphasis in original).[2]

Plaintiff cites *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) in

support of this position, arguing that, in that case, the "employee affirmatively signed an

arbitration agreement including an opt out provision" and only then did the "terms of the

provision become effective."  Dkt. 18 at 9.  Plaintiff contends that here, unlike in *Ahmed*, the

"'opt out' provision was never activated and has no effect - it was rejected along with all other

provisions within the Arbitration Agreement."  *Id.*  But contrary to Plaintiff's contentions, the

employee in *Ahmed* did not sign the relevant agreement in a manner indicating he agreed to be

bound by the Agreement's terms, subject to his ability to opt out; instead, he signed a form

indicating he had *received* the company's arbitration materials, including the opt-out form, and

that he understood that his failure to opt out would result in him being bound by the agreement.

*See Circuit City Stores, Inc. v. Ahmed*, 195 F.3d 1131, 1132–33 (9th Cir. 1999).  When the

employee failed to opt out, the Court found he was required to arbitrate in accordance with the

---

[2] The Agreement's use of the word "may" in this context is more reasonably understood to indicate that an employee may choose to opt out of the Agreement if they so wish—not that an employee may choose to do so by submitting a written statement such that a written statement is not required to opt out.

REPORT AND RECOMMENDATION - 12

agreement, not because he had first assented to the agreement through signature, but because he had not complied with his obligation to opt out. *See Ahmed*, 283 F.3d at 1199–1200. *Ahmed* therefore does not support Plaintiff's position.[3]

Moreover, Plaintiff's reading fails to consider the fact that the Agreement not only seemingly conditioned Plaintiff's acceptance on her signature, but also alternatively on her continued employment. Dkt. 16 at 7 (providing that Plaintiff failing to opt out and continuing to work for Defendant would constitute "mutual acceptance of the terms of this Agreement."). Plaintiff argues that Defendant offered her the ability to opt out "in the event she chose to sign the 'Arbitration Agreement' but changed her mind within thirty days of signing." Dkt. 18 at 9. But how could Plaintiff continuing her employment after failing to opt out constitute her acceptance of the Agreement if she had already accepted the Agreement through signature? Construing the Agreement in this way would render the continued employment component of the Opt-Out Provision meaningless and ineffective, a result which should be avoided. *Wagner*, 95 Wn.2d at 101.

Plaintiff argues that under Washington law, her silence through failure to opt out cannot be construed as an acceptance of Defendant's offer to arbitrate because "an 'offeror cannot prescribe conditions so as to turn silence into acceptance,'" even when "'the offer states that silence will be taken as consent.'" Dkt. 18 at 10 (quoting *Roethemeyer v. Milton*, 177 Wash. 650, 658, 33 P.2d 99 (1934)). She further argues that simply viewing a contract does not

---

[3] While the court in *Ahmed* quoted the proposition that "one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument[,]"*Ahmed*, 283 F.3d at 1200 (quoting *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 710, 552 P.2d 1178 (1976)), it did not do so to indicate that the employee in *Ahmed* manifested his assent to the agreement through signature. In the context of the opinion, the Court understands this reference to mean only that one who *agrees* to a contract cannot so complain. If anything, *Ahmed* supports finding that a party must first have notice of an agreement before being bound by it, not that a party must sign the agreement before its terms take effect. Here, it is undisputed that Plaintiff had notice of the Arbitration Agreement.

1    manifest agreement to its terms, *id.* at 10, even when "an acknowledgment of receipt and

2    understanding of an offer is signed[,]" *id.* at 11 (citing *Burnett v. Pagliacci Pizza, Inc.*, 196

3    Wn.2d 38, 51, 470 P.3d 486 (2020)).  Per Plaintiff, not only did she not sign any

4    acknowledgment of receipt of the Agreement, but she also did not otherwise manifest assent to

5    the Agreement's terms.  *Id.*; *see also id.* at 11–12 (arguing that while there may be no signature

6    requirement for a valid arbitration agreement under the FAA, "an outward manifestation of

7    assent is still required to form a contract[,]" and Plaintiff expressed no outward manifestation of

8    assent).

9          But as indicated, Washington courts construe silence as acceptance when there is a duty

10   to speak, *Saluteen-Maschersky*, 105 Wn. App. at 853, and courts have found such a duty when

11   an employer provides employees with a new arbitration agreement and gives them adequate time

12   to opt out, *Najd*, 294 F.3d at 1109 (applying California law); *see also Robbins*, 2019 WL

13   4139297, at *4.  Further, under Washington law, "[a]cceptance of an offer may be made through

14   conduct," *Am. Express Centurion Bank v. Stratman*, 172 Wn. App. 667, 673, 292 P.3d 128

15   (2012), and the Agreement explicitly provided that Plaintiff continuing her employment would

16   constitute acceptance of its terms. Dkt. 16 at 7.  Thus, this is not a case where a party's

17   acceptance is solely contingent on silence, or even on acknowledgement of receipt of an

18   agreement.  Instead, under the Opt-Out Provision, acceptance was contingent on Plaintiff

19   continuing her employment after failing to opt out.  Plaintiff's contention that she manifested no

20   assent to the Agreement is unpersuasive.

21         Citing *Burnett*, 196 Wn.2d at 51, Plaintiff argues that her continuing to work for

22   Defendant did not constitute an acceptance of Defendant's offer to arbitrate. Dkt. 18 at 12.

23   *Burnett* is inapposite.  In that case, the employee was deprived of the opportunity to read an

1   arbitration agreement at the time he signed a document which purported to incorporate it, but

2   made no mention of arbitration. *Burnett*, 196 Wn.2d at 48–49. The Washington Supreme Court

3   held that the employee could not have assented to the agreement's terms; the fact that he

4   continued working and was paid for doing so did not render the agreement a "knowing

5   agreement" under the circumstances. *Id.* at 51 n.3. *See also Nelson v. Cyprus Bagdad Copper*

6   *Corp.*, 119 F.3d 756, 761–62 (9th Cir. 1997) (holding that an employee did not agree to arbitrate

7   when he signed a form acknowledging receipt of an employee handbook containing an

8   arbitration clause when nothing in the acknowledgment notified him that the handbook contained

9   the clause and waived his right to a judicial forum, or put him on notice that by not quitting, he

10   was agreeing to waive that right).

11        By contrast, here, it is undisputed that Plaintiff received and reviewed the Arbitration

12   Agreement, Dkt. 19 ¶ 3, and that the Opt-Out Provision provided that her continued employment

13   would constitute acceptance of the Agreement's terms. Plaintiff cites no authority holding that

14   conditioning acceptance on continued employment is improper under Washington law.[4] While

15   she argues she did not thoroughly read the Agreement or understand that she was agreeing to

16   waive her right to a jury trial, Dkt. 18 at 3–4, 13, choosing not to read a contract "is not a defense

17   to contract formation in Washington." *Reed v. Scientific Games Corp.*, C18-0565-RSL, 2021

18   WL 2473930, at *3 (W.D. Wash. June 17, 2021).

19        The Arbitration Agreement—which was titled as such, explicitly mentioned arbitration

20   numerous times, and informed Plaintiff that failing to opt out of the Agreement and continuing

21   her employment with Defendant would constitute acceptance of the Agreement's terms—

22   contained sufficient language to "put a reasonable employee on notice that an offer to contract

23

---

[4] The Court addresses Plaintiff's arguments pertaining to whether continued employment constitutes sufficient consideration below.

REPORT AND RECOMMENDATION - 15

1    was on the table[,]" *Robbins*, 2019 WL 4139297, at *5, and an average person would read the

2    Agreement as waiving Plaintiff's right to a judicial forum, *Tjart v. Smith Barney, Inc.*, 107 Wn.

3    App. 885, 896, 28 P.3d 823 (2001). *Cf. Robbins*, 2019 WL 4139297, at *5 (finding that an

4    email, which made no mention of arbitration, framed the "'new program' that employees may

5    want to 'participate in'" as optional, and did not inform employees that failing to opt out of the

6    program would bind them to contractual terms, was insufficient to put employees on notice that

7    an offer was on the table). "[I]gnorance of the contents of a contract expressed in a written

8    instrument" is not a defense to contract formation under the circumstances, *Tjart*, 107 Wn. App.

9    at 897, where the Agreement provided Plaintiff with "ample opportunity to investigate any

10   provisions [she] did not understand before deciding whether to opt out of [the] arbitration

11   program[,]" *Ahmed*, 283 F.3d at 1200.

12          Thus, the Court cannot conclude that Defendant's reading of the manner in which the

13   Arbitration Agreement required Plaintiff's acceptance—by her failing to opt out and continuing

14   her employment with Defendant—is unreasonable.

15          Yet the Court cannot conclude that Plaintiff's reading—that the Arbitration Agreement

16   required her to sign below the Received and Agreed Provision before the Agreement, including

17   the Opt-Out Provision, became effective—is unreasonable, either. Unlike instances where an

18   agreement conditions acceptance solely on a party's acknowledgment of receipt and/or failure to

19   opt out, *see, e.g.*, *Ahmed*, 283 F.3d at 1199, the Received and Agreed Provision plainly also

20   required Plaintiff to indicate her acceptance of the Agreement through signature. Defendant

21   entirely fails to address the Received and Agreed Provision and offers no explanation as to its

22   potential meaning. And while Defendant argues the Opt-Out Provision imposed a duty to speak

23   on Plaintiff, Dkt. 20 at 6, and the Court can look to Plaintiff's actual and/or constructive notice of

1    the Agreement's terms as indication of her willingness to be bound by them, *id.* at 6–7, neither

2    argument resolves the underlying ambiguity between the Opt-Out Provision and the Received

3    and Agreed Provision.  Instead, they simply assume the Agreement required acceptance in the

4    manner advocated by Defendant.

5            Thus, because the Court finds that both parties' interpretations are reasonably supported

6    by the text of the Arbitration Agreement, the Agreement is ambiguous as to how Plaintiff was

7    required to accept it, and a question of fact is presented as to the parties' intent.  *Martinez*, 94

8    Wn. App. at 943.  As such, the "making of the arbitration agreement" is at issue, and the Court

9    should conduct an evidentiary hearing under 9 U.S.C. § 4 to resolve factual issues pertaining to

10   whether the parties entered into the Agreement, including by considering all circumstances

11   surrounding the making of the Agreement and the subsequent acts and conduct of the parties.[5]

12   *See Three Valleys Mun. Water Dist.*, 925 F.2d at 1141 (quoting *Par-Knit Mills, Inc.*, 636 F.2d at

13   54) ("Only when there is no genuine issue of fact concerning the formation of the agreement"

14   should the court decide as a matter of law that an agreement to arbitrate exists); *Marshall v.*

15   *Thurston Cnty.*, 165 Wn. App. 346, 351, 267 P.3d 491 (2011); ("Summary judgment is not

16   appropriate on an ambiguous contract."); *see also Modern Bldg. Sys., Inc. v. N. Am. Mech. Servs.*

17   *Corp.*, CIV. 92-1427-FR, 1993 WL 59134, at *3 (D. Or. Feb. 11, 1993) (finding the contract's

18   arbitration provision ambiguous and ordering a summary trial under 9 U.S.C. § 4 to determine

19   whether the contract required arbitration of the parties' dispute).

20          / / /

21          / / /

22

23          [5] Plaintiff argues that if the Court finds the Agreement is ambiguous, it should construe its terms
     against Defendant because Defendant drafted the Agreement. Dkt. 18 at 9–10.  But because ambiguities
     present a question of fact, the Court must resolve them via an evidentiary hearing under 9 U.S.C. § 4.

1              2.    *Consideration*

2        Plaintiff argues that even if she did agree to enter into the Arbitration Agreement, a

3    contract could not have been formed between the parties because the Agreement lacked

4    independent, additional consideration.  Dkt. 18 at 14–16.  Defendant argues independent,

5    additional consideration can be found in its own agreement to be bound by arbitration.  Dkt. 20

6    at 4–5.

7        Under Washington law, "[i]ndependent, additional, consideration is required for the valid

8    formation of a modification or subsequent agreement" once an employee has already been hired.

9    *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 834, 100 P.3d 791 (2004).  "Independent

10   consideration involves new promises or obligations previously not required of the parties."  *Id.*

11   "The Ninth Circuit has held that consideration for an arbitration agreement proposed subsequent

12   to hiring may be found in the employer's own promise to be bound by the arbitration process."

13   *Robbins*, 2019 WL 4139297, at *3 (citing *Najd*, 294 F.3d at 1108).  Applying Washington law,

14   courts in this district have reached the same conclusion.  *See Sellman v. Boehringer Ingelheim

15   Pharm. Inc.*, C21-1105-JCC, 2021 WL 4989448, at *3 (W.D. Wash. Oct. 27, 2021); *Robbins*,

16   2019 WL 4139297, at *3; *Allbaugh v. Perma-Bound*, No. C08-5713-JCC, 2009 WL 10676437,

17   at *7 (W.D. Wash. Aug. 14, 2009).

18       Plaintiff cites to *Labriola* for the proposition that an employer may not unilaterally

19   modify a contract to add a non-compete provision, and that independent consideration in such

20   contexts "may include increased wages, a promotion, a bonus, [or] a fixed term of employment .

21   . . ."  Dkt. 18 at 14 (citing *Labriola*, 152 Wn.2d at 834).[6]  Because Plaintiff received none of

22   _____

23       [6] Citing *Mayne v. Monaco Enterprises, Inc.*, 191 Wn. App. 113, 122, 361 P.3d 264 (2015),
     Plaintiff argues that the "Washington Court of Appeals has expressed approval for the *Labriola*
     independent consideration requirement in the context of an arbitration agreement," Dkt. 18 at 14,

1  those things, she alleges the Agreement is not supported by consideration. *Id.* at 15–16; *see also*

2  *id.* at 16 (arguing her continued employment cannot serve as consideration). But "arbitration

3  agreements are different. Whereas non-compete provisions only impose obligations on the

4  employee, arbitration agreements require both parties to abide by the arbitrator's decision.

5  Although many employees may not want to submit to arbitration, that does not mean arbitration

6  agreements don't involve reciprocal promises." *Robbins*, 2019 WL 4139297, at *3. The Court

7  therefore finds that the Arbitration Agreement is supported by sufficient consideration in

8  Defendant's promise to also be bound by the arbitration process.[7]

9          3.    *Procedural Unconscionability*

10         Plaintiff argues that even if the Arbitration Agreement was formed, it was procedurally

11 unconscionable and thus unenforceable. Dkt. 18 at 17–18. Defendant argues that procedural

12 unconscionability must be decided by the arbitrator. Dkt. 20 at 11–12.

13         Under the FAA, when deciding whether to grant a motion to compel arbitration, the

14 Court considers only "two 'gateway' issues: (1) whether there is an agreement to arbitrate

15 

16 implying that the same types of additional consideration required to support a non-compete provision are
   likewise required to support an arbitration agreement under Washington law. The court in *Mayne* did not
17 hold as much. Instead, the court, in discussing a contract of adhesion, noted that when an employer asks
   an employee to sign an arbitration agreement, the "employer should in some manner notify the employee
18 of the policy and then take some action to ameliorate the coercive impact of that information in order to
   ensure a voluntary decision. Perhaps the employee could be offered a reasonable time to sign before
19 voluntarily leaving employment, or could be offered some incentive as consideration for the waiver of the
   constitutional right." *Mayne*, 191 Wn. App. at 122. This is, at best, dicta. Further, in this case, it is not
20 disputed that Defendant notified Plaintiff about the Arbitration Agreement, and the Agreement did
   provide Plaintiff with a reasonable amount of time to accept Defendant's offer to arbitrate via the Opt-Out
   Provision. Moreover, it provided that if Plaintiff chose to opt out, she would "not be subject to any
21 adverse employment action as a consequence of that decision." Dkt. 16 at 7. Thus, the Agreement met
   *Mayne*'s standard.

22     [7] Plaintiff contends that Defendant did not "identify any consideration in its motion, and thereby
   fails its burden to demonstrate a valid contract[,]" and that she "need only point out that Defendant has
23 not met its burden to prove a contract for Defendant's motion to be denied." Dkt. 18 at 15. However,
   Defendant submitted the Arbitration Agreement with its Motion to Compel Arbitration, *see* Dkt. 16 at 4–
   8, and the Court takes notice of the reciprocal promise to be bound by arbitration contained therein. This
   is sufficient to demonstrate consideration.

between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). That being said, parties may delegate threshold arbitrability questions, such as whether an agreement is unconscionable, to the arbitrator, so long as their agreement does so by "clear and unmistakable" evidence. *Id.*; *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so"); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

In *Brennan*, the Ninth Circuit held that when an arbitration clause incorporates arbitration rules that provide that the arbitrator shall have, for example, "the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement[,]" then the arbitration clause clearly and unmistakably delegates to the arbitrator the question of whether the arbitration clause is enforceable. *Brennan*, 796 F.3d at 1130–31.

Here, the Arbitration Agreement incorporated the JAMS Rules via the Delegation Provision. Dkt. 16 at 5. Rule 11(b) of the JAMS Rules provides that "[j]urisdictional and arbitrability disputes, including disputes over the . . . validity . . . of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." *Rule 11. Interpretation of Rules and Jurisdictional Challenges*, *supra*. Thus, as in *Brennan*, the Agreement's incorporation of the JAMS Rules constitutes "clear and unmistakable" evidence of

1   the parties' intent to submit issues of arbitrability, including whether the Arbitration Agreement

2   is unconscionable, to arbitration.[8]  *See Brennan*, 796 F.3d at 1131.

3          But this does not end the inquiry.  A question remains as to "whether the particular

4   agreement *to delegate* arbitrability—the Delegation Provision—is itself unconscionable."

5   *Brennan*, 796 F.3d at 1132 (emphasis in original).  When a contract of a general subject matter

6   (like employment) contains an arbitration clause that delegates threshold issues of arbitrability to

7   an arbitrator and a party specifically challenges the enforceability of the arbitration clause—as

8   opposed to the enforceability of the contract as a whole—then the issue is for the court to decide.

9   *See id.* (*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)).  But when a

10  party challenges a contract whose exclusive subject matter is arbitration, and "embedded within

11  *that* contract [are] 'multiple written provision[s] to settle by arbitration a controversy[,]'" *id.*

12  (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)) (emphasis in original),

13  then the party must challenge the enforceability of the specific arbitration clause at issue before

14  the court will intervene, *id.* at 1132–33; *see also Rent–A–Center*, 561 U.S. at 71 ("If a party

15  challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must

16  consider the challenge before ordering compliance with that agreement . . . .").

17         Here, because the exclusive subject matter of the Arbitration Agreement is arbitration, in

18  order for the Court to intervene and determine issues of unconscionability, Plaintiff must have

19

20         [8] In *Brennan*, the court limited its holding to the facts of the case, which involved an arbitration
     agreement "between sophisticated parties."  *Brennan*, 796 F.3d at 1131.  However, the court also
21   provided that its holding "should not be interpreted to require that the contracting parties be sophisticated
     or that the contract be 'commercial' before a court may conclude that incorporation" of arbitration rules
22   delegating issues of arbitrability to the arbitrator constitutes "clear and unmistakable" evidence of the
     parties' intent.  *Id.* at 1130.  Further, the court noted that the "vast majority" of courts that hold that
     incorporation of such rules constitutes clear and unmistakable evidence of the parties' intent "do so
23   without explicitly limiting that holding to sophisticated parties or to commercial contracts."  *Id.* at 1131
     (citing cases).  Thus, it is immaterial that Plaintiff is not a sophisticated party or that the Arbitration
     Agreement is not commercial.

1    challenged the Delegation Provision, specifically, as unconscionable.  But because she did not do

2    so, and instead argues that the Arbitration Agreement as a whole is unconscionable, the issue is

3    for the arbitrator to decide.  *See Brennan*, 796 F.3d at 1132–33.  Thus, assuming Plaintiff

4    assented to the Arbitration Agreement such that it was validly formed, whether the Agreement is

5    unconscionable is to be decided by the arbitrator.

6         C.    Defendant's Waiver of Arguments and Evidence

7         Plaintiff asks the Court to not consider "any new arguments in [Defendant's] reply brief

8    concerning contract formation," Dkt. 18 at 18, because "[i]ssues raised for the first time in the

9    reply brief are waived[,]" *id.* (quoting *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996)).  *See*

10   *also* Dkt. 24.  However, the Court can consider such issues if Plaintiff raised them in her

11   opposition brief, as well as if Plaintiff "has not been misled and the issue has been fully

12   explored." *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) (citation omitted); *see*

13   *also In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir. 1991) ("We have discretion to

14   review an issue not raised by appellant, however, when it is raised in the appellee's brief.").

15        The Court here finds that the new arguments raised by Defendant in its reply brief

16   respond to issues raised by Plaintiff in her opposition brief, and that Plaintiff has had the

17   opportunity to fully explore those issues and has not been misled.  Further, the Court has

18   considered Plaintiff's surreply in issuing this Report and Recommendation, thereby affording

19   Plaintiff the opportunity to respond to any new issues or arguments raised by Defendant on reply.

20   *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.1996) (stating that, on summary judgment, a

21   court can consider new evidence submitted in a reply brief if the opposing party has an

22   opportunity to respond).  The Court therefore declines to strike new issues and arguments from

23   Defendant's reply brief.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, a ruling on Defendants' Motion to Compel Arbitration, Dkt. 15, should be deferred pending the outcome of an evidentiary hearing under 9 U.S.C. § 4.

V.    <u>OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on <u>**July 15, 2022**</u>.

Dated this 29th day of June, 2022.

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23